David S. Toy, Esq. (CA SBN 168368)
Email: dtoy@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone:   713 653 5600
Facsimile:   713 653 5656

Attorney for Plaintiff
Bryce Branzell

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCE BRANZELL,<br><br>*Plaintiff*,<br><br>v.<br><br>CALIFORNIA CRYOBANK LLC, CCB-NWC LLC, d/b/a NW CRYOBANK, NW REPRODUCTIVE LLC, f/k/a CRYO, L.L.C. d/b/a NW CRYOBANK, and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No. 2:19-cv-10745<br><br>**ORIGINAL COMPLAINT**<br><br>Jury Trial Requested |

COMES NOW Bryce Branzell ("Branzell"), complaining of Defendants California Cryobank LLC, CCB-NWC LLC, d/b/a NW Cryobank, NW Reproductive LLC f/k/a CRYO, L.L.C. d/b/a NW Cryobank, and Does 1 through 10, inclusive (each a "Defendant", collectively referred to as "Defendants" and/or "NW Cryobank"), and, for causes of action, would respectfully show unto this Honorable Court as follows:

//

//

//

## I. JURISDICTION AND VENUE

1.1 The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) because the suit is between a citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

1.2 This Court has jurisdiction over California Cryobank LLC and CCB-NWC LLC, as they do business in California. This Court has jurisdiction over NW Reproductive LLC, f/k/a CRYO, L.L.C., d/b/a NW Cryobank, as it purposefully directed its activities towards the State of California, and Branzell's claims arise from those activities.

1.3 Venue is proper pursuant to 28 U.S.C. § 1391(b)(3).

## II. PARTIES

2.1 Plaintiff Bryce Branzell, is a citizen and resident of the state of Texas.

2.2 Defendant California Cryobank LLC, is a California limited liability company, with its principal place of business at 11915 La Grange Ave, Los Angeles, CA 90025, and may be served with process by serving its registered agent, C T Corporation Systems, 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

2.3 Defendant CCB-NWC LLC, d/b/a NW Cryobank, is a California limited liability company, with its principal place of business at 11915 La Grange Ave, Los Angeles, CA 90025, and may be served with process by serving its registered agent, C T Corporation Systems, 818 West Seventh Street, Suite 930, Los Angeles, CA 90017.

2.4 Defendant NW Reproductive LLC, f/k/a CRYO, L.L.C., d/b/a NW Cryobank, is a Washington limited liability company, with its principal place of business at 508 W 6th Avenue, Suite 500, Spokane, WA 99204-2771, and may be served with process by serving its registered agent, Tammy Zimmer, 508 W 6th Avenue, Suite 500, Spokane, WA 99204-2771.

2.5 Branzell is ignorant of the true names and capacities, whether individual, corporate, associate, partnership, or otherwise of each of the Defendants sued herein

as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Such unnamed Defendants include, but are not limited to: (a) officers and/or directors who acted in concert with Defendants against Branzell; (b) other entities affiliated with Defendants that acted in concert with Defendants against Plaintiff; and (c) individuals or entities with whom Defendants acted in concert with Defendants against Branzell. Branzell reserves the right to name such Does as discovery from Defendants reveal their identities.

2.6 Branzell is informed and believes and thereon alleges that each of the Defendants named herein as a Doe was and is negligently, intentionally, or both negligently and intentionally responsible in some manner for the occurrences herein alleged, and the injuries and damages suffered by Branzell as herein alleged, and were the direct and proximate result of, and caused by the acts and omissions of the Defendants, as applicable.

2.7 Defendants California Cryobank, LLC, CCB-NWC LLC and NW Reproductive LLC, f/k/a CRYO, L.L.C., and the applicable Doe Defendants, are alleged to be co-conspirators with each other, successors to liability of the other Defendants and applicable Doe Defendants, and/or independently liable to Branzell, in that each agreed to participate and participated in the furtherance of the objective of a civil wrong as alleged in this Complaint.

### III. FACTS

3.1 It has become necessary to bring this lawsuit as a result of the careless and unexplainable acts and omissions of each iteration of NW Cryobank beginning from the handling of Branzell's sperm in the fall of 2008, through the present and continuing refusal of Defendants to acknowledge its errors, correct its continuing trespass against Branzell's personal property and confirm the destruction of Branzell's genetic material as he requested, and as he was promised.

3.2 In 2008, Branzell submitted to N.W. Andrology & Cryobank, Inc., d/b/a NW Cryobank, a sperm sample for medical testing in advance of becoming a donor.

The testing was the first step in an analysis to determine if he would pass the medical screening and be approved as a donor for NW Cryobank. On the same day Branzell provided his sample, he changed his mind and determined he did not want to be a donor because he did not want to have unknown offspring conceived through his donations. On the same day his initial specimen was provided for testing, he informed NW Cryobank that he did not consent to being a donor, and no longer wanted to be medically screened.

3.3    Because he did not want his specimen to be medically screened, NW Cryobank told Branzell his specimen would be destroyed.

3.4    However, completely contrary to his decision not to become a donor, and without Branzell's knowledge or consent, NW Cryobank did not destroy his sperm, ignored Branzell's directive and against his wishes kept the sample.

3.5    Branzell never agreed to be a donor for any of the NW Cryobank entities or the other Defendants, never consented to any of the NW Cryobank entities or other Defendants selling his sperm, all to avoid being the genetic father of children conceived through artificial insemination. Branzell made this decision and communicated it, but unfortunately each NW Cryobank entity and the Defendants ignored his decision, despite the original assurance given Branzell that his medical screening specimen would be destroyed.

3.6    Around the same time Branzell provided his screening specimen and then changed his mind, C.C. became a customer of NW Cryobank. She carefully screened multiple donors, selected donor characteristics (none of which matched Branzell), and ordered multiple vials of specific donor sperm from NW Cryobank before she conceived.

3.7    Also around this time, NW Cyrobank sold its customer contracts and biological inventory to Defendant Cryo, L.L.C., which continued to do business as NW Cryobank, and Defendant Cryo, L.L.C., continued to operate the sperm bank facility where C.C. was a customer.

3.8     C.C. initially purchased three vials of a specific donor's sperm from NW Cryobank, but was unsuccessful in conceiving with that sperm. Following these unsuccessful attempts, she requested samples from another donor based on the information provided by NW Cryobank regarding his background.

3.9     C.C. selected this second donor in part because he was an "Open ID Donor" ("open donor"), and thus open to communicating with children conceived with his sperm, once the children turned eighteen.

3.10    C.C. purchased three vials of what was represented by NW Cryobank to be the sperm of this second, open donor, and C.C. successfully conceived with the sample.

3.11    Following this conception, C.C. used the website operated by NW Cryobank to reach out to other parents who were attempting to become or were already pregnant by the same donor C.C. had selected. She met and became friends with another woman, L.R., who was also expecting a child conceived with vials from the second, open donor, originally selected by C.C. The two women remained in contact during their pregnancies and developed a close friendship.

3.12    C.C. gave birth to her child, T.C., in July, 2009, using sperm obtained from NW Cryobank. L.R.'s child was born weeks later in August, 2009. As the children grew older, they became close. The mothers informed both children that they were conceived with the same donor's genes, and were half-siblings as a result. In the following years the two children were inseparable, living as friends and family. This familial relationship was important to both mothers, and their children.

3.13    In and around August 2016, Defendant Cryo, L.L.C., sold its customer contracts and human sperm inventory to CCB-NWC LLC, which began to operate the facility and continued to do business as NW Cryobank.

3.14    Time passed, and in May 2018, the two mothers decided to submit DNA samples from the two children to ancestry.com in order to discover medical information regarding what they believed to be their shared donor. Instead, in August

2018 they learned that their two children did not have the same father. L.R.'s child was conceived with the sperm of the second, open donor, but C.C.'s child was not.

3.15   The mothers agreed to have both children undergo buccal swab testing at the request of Defendant California Cryobank, LLC, which continued to maintain records on both women, either directly or through Defendant CCB-NWC LLC, d/b/a NW Cryobank.

3.16   On November 28, 2018, C.C. was contacted by Defendant California Cryobank, LLC, and for itself and NW Cryobank, told C.C. the DNA results confirmed her friend L.R. received sperm from the second, open donor, but C.C. had not.

3.17   Consequently, C.C. now had no information regarding the identity of the person whose sperm she was provided in 2008 by NW Cryobank.

3.18   C.C. had no sexual relations to conceive her child T.C., so there was no possibility for conception other than via the sperm provided to C.C. by NW Cryobank. This was very upsetting to C.C., as she had put her trust in NW Cryobank, and remained loyal to and involved with each iteration of NW Cryobank, and had chosen this second, open donor for specific and personal reasons.

3.19   In a stroke of luck for C.C., she was contacted on ancestry.com in December 2018, by Branzell's half-sister. At that point neither woman knew the link between them, and Branzell's half-sister was simply inquiring whether the match with C.C. might be within their family.

3.20   In January 2019, C.C. learned that Karen Branzell, Bryce Branzell's mother, was a "close match" to T.C. on ancestry.com. Via exchanges between all three women, the discovery was made: Bryce Branzell, a man that C.C. had never met and knew nothing about, was the genetic father of T.C.

3.21   It now became abundantly clear that instead of abiding by the wishes of Branzell and destroying his testing specimen, NW Cryobank kept his sperm. Defendant CRYO, L.L.C., was on information and belief, operating the NW

6
PLAINTIFF'S ORIGINAL COMPLAINT

Cryobank facility when it fulfilled C.C.'s order for donor sperm. Despite the instruction from Branzell to withdraw the testing specimen and the promise made to destroy it, NW Cryobank did not heed those instructions, or abide by its promise, and sold Branzell's sperm to C.C., who was expecting to receive sperm from her specifically selected open donor.

3.22 There was no legitimate reason or justification for NW Cryobank to not destroy Branzell's sperm after Branzell advised that he no longer wished his specimen to undergo medical screening.

3.23 Through either a deliberate decision to profit from Branzell's test sample, or negligence in failing to implement policies and procedures to track samples, and to segregate and destroy sperm specimens when instructed, all in order to prevent an incident like this, NW Cryobank provided at least some of Branzell's sample to C.C. instead of the sperm from the second, open donor she had requested. It is hard to imagine the sequence of events required to make an error like this.

3.24 To make maters worse for Branzell and potentially others in the same circumstances as C.C., CCB-NWC LLC, still doing business as NW Cryobank, has, or is likely to have, the remainder of Branzell's testing sample, but they cannot identify it, and thus may have shipped it to other people for insemination, despite Branzell's stated desire to withdraw his testing sample, and to not be a donor.

3.25 The acts of NW Cryobank have resulted in one individual who did not want to be a sperm donor having at least one child conceived by artificial insemination. Worse still, NW Cryobank cannot determine how many others were provided sperm from Branzell, or continue to be provided his sperm.

3.26 Branzell chose not to become a sperm donor because he did not want children he had no relationship with. It has now been confirmed that Branzell is the genetic father of a child he has never met. Branzell is now haunted by what he does not know, specifically how many other mistakes NW Cryobank made, and how many other children were or will be conceived with his sperm.

## IV.  CAUSES OF ACTION

**A.     NEGLIGENCE**

4.1     Plaintiff re-alleges and incorporates by reference paragraphs 3.1 through 3.26 as if fully set forth herein.

4.2     Defendants, and each of them, as the owner, operator, and manager of NW Cryobank, and as the entities responsible for the past and present management of NW Cryobank's records and the integrity of its genetic material catalog, owed a duty to Branzell to track his specimen, to have destroyed it as he requested, and to not maintain it in their biological inventory.

4.3     Defendants breached their duties to Branzell by, among other things:

(a) failing to implement adequate policies and procedures related to the handling and labeling of sperm, and of keeping adequate records of sperm donors, and their wishes, and to follow those wishes;

(b) failing as sellers of biological products to adequately keep an inventory of their products, matched to the donors, and kept consistent with their wishes, including to destroy the samples, and failing each time each Defendant came into possession or control of the sample, to identify Branzell's sample, and destroy it according to Branzell's instruction;

(c) failing to provide the proper sperm that had been purchased, which would have prevented Branzell's sperm from being shipped to C.C. and possibly others;

(d) failing to adequately monitor and control the conduct of their employees to ensure proper records were kept, and sperm samples appropriately handled;

(e) failing to promulgate and/or enforce policies and/or procedures designed to prevent the wrong sperm being provided to its customers, and from being provided against the wishes of donors; and

(e) other acts of negligence and/or omissions to be shown at trial herein.

4.4     As a direct and proximate result of negligent acts and/or omissions described above, Branzell's specimen was not destroyed and was provided to C.C., who conceived a child with it, causing damage to Branzell.

## B. TRESPASS TO PERSONAL PROPERTY

4.6 Plaintiff re-alleges and incorporates by reference paragraphs 3.1 through 3.26 as if fully set forth herein.

4.7 Branzell possessed his sperm, and had a right to donate it for testing, and to withdraw it from testing, and for donation, and to request it be destroyed.

4.8 Defendants, and each of them, have and continue intentionally to interfere with Branzell's property, and his right to have that property destroyed.

4.9 Branzell has not consented to this interference, and specifically requested his sample be destroyed, as was promised to him by NW Cryobank.

4.10 Defendants failure and refusal initially to abide by Branzell's wishes, and now that those wishes have again been made know, to locate and destroy his sample provide confirmation of that destruction, and to provide confirmation that his sample has not further been distributed as a donor, has caused Branzell harm, including but not limited to mental anguish and physical suffering as a result of that anguish.

## C. BREACH OF FIDUCIARY DUTY

4.11 Plaintiff re-alleges and incorporates by reference paragraphs 1.1 through 3.26 as if fully set forth herein.

4.12 Plaintiff and Defendants had a fiduciary relationship because of the relationship of trust and/or confidence entered into between Branzell and NW Cryobank, and which arose out of the special circumstances in which Branzell was wholly dependent on Defendants to handle and manage his sperm, and to respect and discharge his instructions as to that sperm, regardless of which Defendant was in possession or control of it. Branzell placed his most sensitive and personal material into the hands of Defendants, who violated Branzell's trust and breached their fiduciary duty to him by not destroying his sample, by sending it C.C., and by being unable now to locate his sample, confirm its destruction, and confirm whether the sample has been given to any other recipients.

4.13  Defendants were required to act for Branzell's benefit, and to act in the utmost good faith for Branzell's benefit on all matters within the scope of their relationship, primarily in protecting Branzell's personal rights and wishes.

4.14  Defendants breached their fiduciary duties to Branzell, and have caused him damages as a result.

## V. DAMAGES

5.1  As a direct and proximate result of Defendants' acts and failures to act as set forth herein, Branzell has suffered the following injuries and damages, including, but not limited to: (a) mental anguish in the past; (b) mental anguish the he is likely to sustain in the future; (c) actual pecuniary in excess of $10,000,000 and non-pecuniary damages to which he is entitled to recover; and (d) any other damages to which his is entitled under applicable law.

## VI. JURY DEMAND

6.1  Plaintiff demands a trial by jury herein on all issues so triable.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

WHEREFORE, Branzell prays for judgment against Defendants for: actual damages in an amount exceeding the jurisdictional limits of this Court; prejudgment and post judgment interest; and attorney's fees; costs of suit; and all such other relief to which he may show himself justly entitled, in law or in equity.

DATED: December 19, 2019

Respectfully submitted,

**SPAGNOLETTI LAW FIRM**

*/s/ David S. Toy*
David S. Toy

**OF COUNSEL:**

**SPAGNOLETTI LAW FIRM**
Eric J. Rhine (TX SBN 24060485)
erhine@spaglaw.com
401 Louisiana Street, 8th Floor
Houston, TX 77002
Telephone: 713 653 5600
Facsimile:   713 653 5656

Attorneys for Plaintiff Bryce Branzell